# EXHIBIT E



महाराष्ट्र MAHARASHTRA            ⓘ 2019 ⓘ                    AW 196769



## ASSIGNMENT AND CONSENT AGREEMENT

This Assignment and Consent Agreement (hereinafter referred to as the "Agreement") is made and executed by and between **Cox and Kings Global Services Pvt. Ltd.**, (Company Registration No.: U63040MH2011PTC215069 and referred to herein as "CKGS"), a company incorporated in India with its registered address at Turner Morrison Building, 1st Floor, 16, Bank Street, Fort, Mumbai, Maharashtra—400001, India, as the assignor AND **Cox and Kings Global Services Management (Singapore)Pte Ltd.**, Singapore, a company incorporated under the laws of Singapore and having its registered office at 8 Temasek Boulevard, #22-03, Suntec Tower Three, Singapore 03898 (hereinafter referred to as "CKGS Singapore"), as the confirming party, (CKGS and CKGS Singapore for the purposes of this Agreement are referred to as the "CKGS Companies") of the First Part and **World Compliance Technologies Pvt. Ltd.**, a company incorporated in India with its registered address at 1027-1030 Tower B3, Spazei-Tech park, Sector 49, Sohna Road, Gurgaon, India, (hereinafter referred to as "WCT" of the Second Part).

**˚10391**

जोडपत्र-१ Annexure - 1
फक्त प्रतिज्ञापत्रासाठी Only for Afidavit
मुद्रांक विकत घेणा-याचे नाव _____

मुद्रांक विकत घेणा-याचे रहिवासी पत्ता _____

CCX & KINGS GLOBAL SERVICES PVT. LTD.
TURNER MORRISSON BUILDING,
16, BANK STREET, FORT,
MUMBAI - 400 001.
TEL.: (022) 22709100
FAX : (022) 22709161

मुद्रांक विक्रिबाबतची नोंद वही अनु. कर्मांक _____ दिनांक _____

मुद्रांक विकत घेणा-याची सही
परवाना क्रमांक : ८०००००३        परवानाधारक मुद्रांक विक्रित्याची सही
मुद्रांक विकीचे नाव/पत्ता : श्री. अशोक रघुनाथ कदम
२९०, शहिद भगत सिंह रोड, २/१५, आनंद भुवन, फोर्ट, मुंबई - ४०० ००१.
शासकीय कार्यालयासमोर / न्यायालयासमोर प्रतिज्ञापत्र सादर करणेसाठी मुद्रांक
कागदपत्राची आवश्यकता नाही. (शासन आदेश दि. ०१/०७/२००४ नुसार)
ज्या कारणासाठी ज्यांनी मुद्रांक खरेदी केला त्यांनी त्याच कारणासाठी मुद्रांक खरेदी
केल्यापासून ६ महिन्यात वापरणे बंधनकारक आहे.

20 JAN 2020

20 JAN 2020

The terms "CKGS", "CKGS Singapore" and "WCT" shall hereinafter mean and include their respective legal representatives, permitted assigns, attorneys, successors-in-interest and all those claiming through them respectively. "CKGS", "CKGS Singapore" and "WCT" shall individually be referred to as "Party" and jointly be referred to as "Parties" for the purposes of this Agreement.

## RECITALS

WHEREAS, CKGS warrants and represents that it is in contractual privity with the various Government Agencies as further described through the included contracts in Exhibit 1 and Exhibit 2 (hereinafter referred to as the "Embassy") to provide a wide range of Visa and Passport related Services and as described in the Agreements made between the various Governments and CKGS and their respective Extension Agreements/Addendums that extend the original agreements (All agreements and their extension agreements/ addendums are collectively called as "Processing Agreements" and services described and performed therein as "Processing Services") are incorporated herein by reference and attached hereto as **Exhibit 1(colly)**.

AND WHEREAS, CKGS warrants and represents that the Processing Agreements are in full force and effect through December 31, 2021 and that CKGS,as of the date of this Agreement, has not received a notice of termination and/or breach by the Embassy, for any reason, including for either non-performance under Processing Agreements, and/or on accountthat the Hon'ble National Company Law Tribunal, Mumbai Bench, Mumbai has admitted an insolvency application against Cox & Kings Ltd., who is the Owner or Shareholder of CKGS; CKGS further warrants that its management, or office bearers, are not aware of any such notice of termination or its intentthat is expected from the Embassy in the immediate foreseeable future. CKGS also warrants that there are no acts, encumbrances, agreements, undertakings etc. of any nature whatsoever to their knowledge that in any manner interfere, encumber and/or restrict the CKGS Companies from entering into the present Agreement and/or assigning its rights in the Processing Agreements as envisaged under this Agreement.

AND WHEREAS, CKGS and CKGS Companies warrants and represent that in order to provide the various "Processing Services" under this Agreement and to perform Processing Services outlined in the Processing Agreements, CKGS companies have the information, operating procedures, reports, studies, charts, plans, diagrams, presentations and any other tangible or intangible information, deliverables and all inventions, discoveries, specifications, designs, methods, business processes or models, devices, writings, compilations of information, and all computer software, compiled and source code, documentation, hardware, software architectural diagrams, user documentation, user names, passwords, license keys to third party software platforms, productsand/or materials developed or produced, that are directly or indirectly used for performing "Processing Services", protectable as intellectual property under the laws of patent, copyright, trade secret, or other forms of intellectual property protected by law. (collectively the "Work Product").

AND WHEREAS, CKGS has employees and contractors ("Key Persons"),that are directly or indirectly involved in providing Processing Services under the Processing Agreements and are considered vital to the successful execution of the Processing Agreements, further listed in **Exhibit 2**

AND WHEREAS, CKGS warrants and represents that it is the sole owner (subject to no liens or encumbrances of any third parties) and that it has the legal authority to

irrevocably and permanently transfer and assign all of its Work Product, that are required to be perform the Processing Services under the Processing Agreements, to WCT and the same does not require the consent or approval of any third party including, but not limited to Hon'ble National Company Law Tribunal, Mumbai, its appointees, and/or any other statutory authority.

AND WHEREAS, CKGS and WCT acknowledge and agree that this Agreement is contingent upon the Embassies through the Ministry of External Affairs, India and the Government Agencies (together referred as the "Authorities") agreeing to assign the Processing Agreements to WCT in the manner stipulated in this Agreement.

AND WHEREAS during the Term of this Agreement as mutually agreed between the parties, WCT shall pay a monthly fee to CKGS and limited only for the current duration of the assigned Processing Agreements after: (1) the assignment of the Processing Agreements in favor of WCT by the Authorities; (2) permanent, exclusive, and irrevocable transfer of the Work Product to WCT (3)Transfer of Key Persons to WCT, and assignment of any third party vendors agreements/contracts that CKGS utilizes for Processing Services under the terms of the Processing Agreements; (4) WCT providing a Bank Guarantee that matches the Bank Guarantees provided by CKGS under the Processing Agreements and (5) after providing the Bank guarantees, WCT shall retain exclusive rights to all of the Work Product and other vendors contracts and/or contact information. WCT shall further retain the unfettered right to bid for and enter into a new binding agreements with the Authorities, without any additional obligations to CKGS maintaining the same distribution ratio for future projects.

AND WHEREAS based on the above representations and warranties of the CKGS Companies and the understanding arrived at between the parties, the parties are executing the present Agreement on mutually agreed terms and conditions.

NOW THEREFORE IT IS HEREBY AGREED BY AND BETWEEN THE PARTIES HERETO AS UNDER:

### 1. RECITALS

1.1 All recitals and exhibits set forth above and in this Agreement are incorporated by reference as if they were fully set forth herein.

### 2. TERM OF THIS AGREEMENT

2.1 This Agreement shall take effect from the date of the execution of this Agreement and shall be valid until December 31, 2021. The Agreement is however, contingent upon the Authorities approving the assignment of the Processing Agreements by or before the Pre-Closing Date.

2.2 It is further agreed between the parties that subject to the CKGS Companies obtaining written in-principle approval of assignment of the Processing Agreements and Processing Services in favour of WCT from the Authorities by or before the Pre-Closing Date, WCT shall simultaneously on receiving a copy of such approval, handover/submit such bank guarantee(s) as detailed in **Exhibit 3** to the Authorities.

2.3 Bank guarantee shall be conditioned on WCT retaining the Processing Agreement from the date of assignation through its termination on December 31, 2021. If for whatever reason, if any act, action, claim, dispute, difference, liability, etc. from a court of law or a third party or a claim of any nature whatsoever that may arise on account of any misrepresentation and/or non-disclosure by the CKGS Companies

or for any reason whatsoever (other than non-performance by WCT) result in the premature termination of the Processing Agreements, the Bank guarantee provided to the authorities will be null and void.

## 3. REPRESENTATION, WARRANTIES AND OBLIGATIONS OF WCT

3.1 WCT warrants and represents that it is a Company duly organized and existing under the laws of India.

3.2 WCT has all the requisite power and authority to execute and deliver and perform its obligations under this Agreement.

3.3 OBLIGATIONS OF WCT

   a. Subject to Clause 2.1, WCT shall secure Bank Guarantee(s) that is satisfactory to the Authorities.

   b. WCT shall pay a fee of 5% of PAT to be calculated and paid every month through December 31, 2021 to CKGS in exchange for the assignment of the Processing Agreements; transfer of all Work Product and Key Persons, and list of all vendors and other information and know-how in order to commence processing of Processing Services as detailed in the Processing Agreements, and subject to successful performance of all the terms of this Agreement by CKGS including the Processing Agreements being in full and force effect through December 31, 2021.

   c. WCT shall pay CKGS as specified in Paragraph 3 (b) herein and subject to the following terms and conditions:-

   Fifteen days after the expiration of each month, WCT shall submit a report detailing PAT. CKGS shall have 10 (ten) days from receipt of the report to make written objections to the report. If no objections are timely made to the report by CKGS, report will be deemed final. WCT shall make payments within 30 (thirty) days at the end of each month. An ESCROW account will be opened by WCT to secure the interest of both the parties. Objections are to be limited to only the modifications made. WCT shall have the right to a set-off against future payments payable to CKGS as a result of any modifications made to a quarterly report within one calendar report.

## 4. REPRESENTATIONS AND WARRANTIES OF CKGS AND OBLIGATIONS OF CKGS

4.1 CKGS warrants and represents to WCT:

   (a) CKGS is duly organized under the laws of India.
   (b) CKGS has all the power and authority to execute and deliver, and perform its obligations under this Agreement and to consummate this transaction contemplated herein has been approved by the Board of Directors of the CKGS Companies.
   (c) Neither the execution nor the delivery of this Agreement, nor the consummation of the transactions contemplated herein will:
      (i) Violate any laws and/or legal requirements or any governmental authority;
      (ii) Conflict with, result in a breach of, constitute a default under, result in termination, modification, or cancellation, or requiring any notice under

any agreement contract, instrument, or other arrangement to which either CKGS or CKGS companies is a party.

4.2 Obligation of WCT to perform and full-fill its obligations under this Agreement is conditioned upon on CKGS Companies satisfying the conditions set forth in paragraphs4.2 through 4.10below.

4.3 CKGS Companies warrant and represent no administrative, investigatory, judicial, quasi- judicial or arbitration proceedings have been brought by any Person seeking to enjoin, or seek Damages from any party in connection with the Processing Agreements or its assignments, and transfer of the Processing Services and/or Work Product and/or other property of CKGS Companies to WCT.

4.4 CKGS and/or its subsidiaries or entities, including CKGS Singapore shall coordinate and

facilitate in the transition and transfer of Work Product, Key Persons, and all Vendor Agreements and provide written confirmation from each of these vendors that they shall agree to perform services for WCT on the same terms and conditions as they currently are with CKGS. WCT has the right but not the obligations to engage the services of one or more of these Vendors to perform Processing Services.

4.5 CKGS Companies warrant and represent that they have clear and marketable title to the Work Product and are entitled to , transfer to WCT all of the legal and beneficial interest in Work Product in accordance with the terms of this Agreement..

4.6 CKGS and CKGS Singapore shall assign to WCT all of its Work Product; with regards to Processing Services listed in the Processing Agreements.

4.7 CKGS shall take all affirmative steps to have the Authorities provide its written consent to the transfer the Processing Agreements to WCT for the remainder of their respective terms and provide written assurances and guarantees that the same is not in violation of any agreement; court order; law, statute and is without objection of any third parties including any Authorities, any creditors of CKGS and/or the CKGS Shareholder companies, direct or indirect subsidiaries, direct or indirect joint ventures, direct or indirect associate companies, or any other company over which CKGS has control

4.8 CKGS warrants and represents that the Processing Agreements shall remain in full force and effect for the remaining term (after the assignment) provided WCT is not in material breach of any of its obligations therein.

4.9 CKGS and CKGS companies shall provide written confirmation from its vendors, contractors, and Key Persons that provide Processing Services that they do not have any monetary or non-monetary claims against CKGS and/or CKGS companies. Estoppel letter shall also be provided by CKGS Companies that CKGS and/or CKGS Companies have paid the Vendors and/or contractors in full for services rendered prior to the Assignment of the Processing Agreements upto the Closing Date.

4.10 All of the warranties and representations and the obligations of CKGS and/or CKGS Companies set forth in Paragraph 4 shall survive closing.

## 5. COMPENSATION FROM WCT TO CKGS COMPANIES

5.1 All parties agree that in consideration for assigning the Processing Agreements; transferring Work Product, Key Persons,and providing all necessary information

of existing vendors that assist with the Processing Services under the Processing Agreement, WCT shall pay CKGS as described in Paragraph 3.3 (b)

## 6. CONSENT TO TRANSFER INTELLECTUAL PROPERTIES OF CKGS's COMPANIES, KEY PERSONS, AND ITS PROCESSING AGREEMENTS TO WCT

6.1 ALL Work Product of CKGS, Key Persons, and/or other information including contracts with Vendors that assist with the Processing Services under the Processing Agreements shall be transferred to WCT on the Date of execution of this Agreement and prior to the closing for a period of 2 years.

6.2 An in- principle written approval of assignment of the Processing Agreements and Processing Services in favour of WCT specifically shall be enabled and obtained from the Authorities by CKGS prior to the Pre-Closing Date. Assignment of the Processing Agreement shall be on the same terms and conditions as the Processing Agreements that are in place with CKGS at this time.

## 7. PRE-CLOSING AND CLOSING.

7.1 Pre-Closing Date shall be on or before the expiration of this Agreement by which time CKGS shall obtain in principle written approval of the Processing Agreements and Processing Services in favour of WCT from the Authorities. Simultaneously, with such approval being provided by CKGS to WCT, WCT shall deliver the Bank Guarantee(s) as detailed in Exhibit 3 to the Authorities.

7.2 Closing shall occur 10 (ten) business days after all deliverables under this Agreementare delivered and accepted by WCT and the satisfactory complete Assignment of the Processing Agreements and the relevant Authorities accepting the Bank Guarantee provided by WCT. During the period until Closing date CKGS undertakes full responsibility to successfully run Processing Services as required under the Processing Agreements including making payments when they come due in the ordinary course of business to Vendors and all employees.

## 8. INDEMNIFICATION

8.1. That the CKGS Companies hereby undertake to indemnify and keep indemnified WCT, its directors, shareholders, employees, agents and all those claiming through it against:-

(i) any claim, liability, dispute, difference, etc. of any nature whatsoever that may arise with respect to any liability, dues, obligations, etc. of the CKGS Companies, individually or jointly, or otherwise, towards any third party, including but not limited to the Authorities, other statutory authorities, third party vendors, third party agents, contractors, employees, etc. related to the Processing Agreements and/or Processing Services and/or Work Product and/or Key Persons for the period prior to the Closing Date whether such claim or dispute is raised before or even after the Closing Date;

(ii) any act, action, claim, liability, etc. that may arise against WCT and/or in connection to the Processing Agreements, Processing Services and/or Work Product and/or Key Persons and/or any other right being assigned to WCT under the present Agreement, on account of the pending litigation before the National Company Law Tribunal, Mumbai Bench, Mumbai and/or any other

such forum, court of law, etc. against Cox and Kings Ltd. which as represented by the CKGS Companies is the holding company of the CKGS Companies.

(iii) any act, action, claim, dispute, difference, liability, etc. of any nature whatsoever that may arise on account of any misrepresentation and/or non-disclosure by the CKGS Companies with respect to the Processing Agreements and/or with respect to the CKGS Companies which in turn would, directly and/or indirectly, affect the assignment of rights, in part and/or in whole, under the Processing Agreements, Processing Services, Work Product and other rights as provided under this Agreement to WCT.

8.2 WCT hereby agrees to indemnify and keep indemnified the CKGS Companies against any act, action, claim, dispute, difference, liability, etc. of any nature whatsoever that may arise on account of any misrepresentation and/or non-disclosure by WCT which affects its ability and capacity to enter into the present Agreement.

## 9. TERMINATION

That the present Agreement may be terminated in case of:-

(a) the failure on the part of the CKGS Companies to obtain by the Pre-Closing Date an in- principle written approval from the Authorities for assignment of the Processing Agreements and Processing Services in favour of WCT. In case, the CKGS Companies are unable to obtain the in- principle approval as envisaged in this Agreement from the Authorities by the Pre-Closing Date, the present Agreement shall stand terminated automatically and there shall be no liability of either party qua each other any further.

(b) the failure of WCT to provide the Bank Guarantee(s) as defined in Exhibit 3 to the Authorities in the manner provided in this Agreement. In such case also, the present Agreement shall stand terminated automatically and there shall be no liability of either party qua each other any further.

(c) the failure of the CKGS Companies to complete all its obligations of assignment of rights by the Closing Date in favour of WCT in the manner provided in the present Agreement hereinabove. It is agreed that WCT shall solely have the right to extend the Closing Date if it so deems fit to enable the CKGS Companies to complete their obligations. In case the CKGS companies are unable to fulfill their obligations to be completed by the Closing Date or Extended Closing Date, WCT shall have the right to terminate the present Agreement and in turn, the CKGS Companies will be liable to within a period of 10(ten) days refund the entire Bank Guarantee(s) amount to WCT and provide a No Liability Certificate to WCT clearly stating that WCT shall have no further liabilities towards the CKGS Companies and/or the authorities and/or any third parties of any nature whatsoever. In case, the CKGS Companies fail to refund the Bank Guarantee(s) amount within a period of 10(ten) days, in addition to all other remedies available in law to WCT, the CKGS Companies shall also be liable to pay interest upon such due amount @ 18% simple interest per annum till the entire due amount of the Bank Guarantee(s) are paid by the CKGS Companies to WCT.

(d) Any liability, act, action etc. that arises on account of the litigation pending against Cox and Kings Ltd. before the National Company Law Tribunal, Mumbai Bench, Mumbai against WCT and/or any other court, forum etc. and/or on account of any misrepresentation and/or non disclosure on the part of the CKGS Companies, which in turn renders WCT unable to enforce any of its rights assigned under the

present Agreement and/or perform any of its duties under the Processing Agreements and/or provide any of the Processing Services and/or utilize the Work Product and/or Key Persons in any manner whatsoever. In case of any such act, action, etc. as detailed herein in this sub-clause, WCT shall have the right to terminate the present Agreement and in turn, the CKGS Companies will be liable to within a period of 10 (ten) days refund the entire consideration, fee, etc. received by it under the present Agreement as well as the entire bank guarantee(s) amount to WCT and provide a No Liability Certificate to WCT clearly stating that WCT shall have no further liabilities towards the CKGS Companies and/or the authorities and/or any third parties of any nature whatsoever. In case, the CKGS Companies fail to refund the said amounts as defined in this sub-clause as well as the Bank Guarantee(s) amount within a period of 10(ten) days , in addition to all other remedies available in law to WCT, the CKGS Comapanies shall also be liable to pay interest upon such due amounts @ 18% simple interest per annum till the entire due amounts are paid by CKGS Companies to WCT.

## 10. NOTICE AND COMMUNICATIONS.

10.1 Any Notice to be given under this Agreement shall be given in writing. Notice must be transmitted electronically via email and through registered post or courier services such as DHL.

**CKGS :**

Contact Person: Peter Kerkar

Address: Turner Morrison Building, 16 Bank Street, Fort, Mumbai – 400001, India

Email Address: peter.kerkar@coxandkings.co.uk

**CKGS Singapore :**

Contact Person: Animish A. Hardas

Address: 8 Temasek Boulevard # 22-03, Suntec Tower 3, Singapore 038988

Email Address: animish.hardas@ckgs.com

**WCT :**

Contact Person: Deepak Jairam Jadhav

Address:1027-1030 Tower B3, Spaze I-Tech park, Sector 49, Sohna Road, Gurgaon – 122018 (Haryana), India

Email Address: wct-legal@wct-inc.com

11.   **SEVERABILITY**

11.1 If any provision of the Agreement is hereby invalid, illegal or unenforceable for any reason by any court of competent jurisdiction, such provision shall be severed and the remainder of the provisions of the Agreement shall continue in full force and effect. In the event of a holding of invalidity so fundamental as to prevent the accomplishment of the purpose of this Agreement, the Parties shall immediately commence negotiations in good faith to remedy the invalidity.

## 12. WAIVER

12.1 The failure of the Parties to insist upon strict performance if any provision of the Agreement, or failure of either party to exercise any right or remedy to which it is entitled under the Agreement, shall not constitute a waiver of such obligation, right or remedy, and shall not diminish the obligations established by the Agreement. A waiver of right against any breach shall not constitute a waiver of any right against or other subsequent breach.

12.2 No waiver of any right under this Agreement by one Party shall be effective unless it is expressly stated to be a waiver and communicated by the Party to the other Parties in writing as set forth herein.

## 13. DISPUTE RESOLUTION AND MANDATORY ARBITRATION

13.1 That in case of any dispute and/or difference arising in relation to the present Agreement between the parties, the parties shall at first instance attempt to resolve the same amicably within a period of 15 (fifteen) days. In case, the parties are unable to resolve such dispute/difference within a period of 15 (fifteen) days of the intimation of such dispute and/or difference by any of the parties to this Agreement, such dispute and/or difference shall be referred to arbitration to an arbitral panel of 3 (three) Arbitrators. WCT shall have the right to appoint 1 (one) Arbitrator and the CKGS Companies shall have the right to appoint the second Arbitrator and the said 2 (two) Arbitrators shall jointly thereafter appoint a third Arbitrator, to form the panel of 3 (three) Arbitrators. The proceedings of Arbitration shall be governed by the Arbitration and Conciliation Act, 1996 and the language of the Arbitration proceedings shall be English. The venue and seat of Arbitration shall be Delhi alone. The cost of Arbitration including but not limited to the fee of the Arbitrators shall be equally borne in the ratio of 50%:50% between the WCT and the CKGS Companies. It is specifically agreed between the parties that nothing in this clause shall estop in any manner whatsoever, either WCT or the CKGS Companies from approaching the appropriate Court for urgent interim relief and/or injunctive relief under the Arbitration and Conciliation Act, 1996.

## 14. NON-COMPETE AND SOLICITATION

14.1 During the term of the Processing Agreements and for a term of 3 (three) years after the expiry of the Processing Agreements, CKGS and CKGS Companies shall not compete, directly or indirectly with WCT in any manner whatsoever.

14.2 CKGS and CKGS Companies agree that they shall not solicit and/or approach and/or make any efforts to obtain business from any of the Authorities as outlined in this Agreement and/or in the Processing Agreements.

## 15. MODIFICATION

15.1 This Agreement shall not be altered, modified, or supplemented and no such alteration, modification, supplementation, etc. shall be binding upon the parties unless the same is in writing and is counter signed by all the parties to this Agreement

## 16. ENTIRE AGREEMENT

16.1 This Agreement including the Sections and any attachments/exhibits set forth form the entire Agreement and understanding between the parties and the present Agreement supersedes all negotiations, commitments and understanding prior to date hereto pertaining to the subject matter of this Agreement.

FOR:

COX AND KINGS GLOBAL SERVICES Pte Ltd, Singapore

ANSMISSH, A    HARDAS

_____

[Authorized Signatory]


COX AND KINGS GLOBAL SERVICES Pvt. Ltd, India

PETER AJAY AJIT KERKAR

_____

[Authorized Signatory]

WCT:   DEEPAK JAIRAM JADHAV.

_____

[Authorized Signatory]


In the presence of:

1. Manoranjan Singh

_____
[Witness]

Exhibit 1:

## Original Agreements and their Extensions

1) Embassy of India Washington DC and M/s Cox and Kings Global Services Private Limited for Visa, OCI, Renunciation and PIO cards
2) Embassy of India Washington DC and M/s Cox and Kings Global Services Private Limited for Passport Services
3) Embassy of India Kuwait and M/s Cox and Kings Global Services Private Limited for Passport and Visa Services
4) Embassy of India Stockholm, Sweden and M/s Cox and Kings Global Services Private Limited for Passport and Visa Services
5) Embassy of India Israel and M/s Cox and Kings Global Services Private Limited for Passport and Visa Services

(Please list all agreement in here)